**O**

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>$99,870.00 IN U.S. CURRENCY,<br><br>      Defendant. | Case No. 2:15-CV-04663-ODW (AGRx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [19]** |

## I.     INTRODUCTION

On June 19, 2015, the United States government ("Plaintiff") filed a complaint against currency in the amount of $99,870.00 ("Defendant") in a civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6), seeking declaratory relief.  (Complaint ("Compl.") ¶ 1, ECF No. 1.)  The interests of Gurdeep Singh, Davit Davtian, Akop Narinian, Samvel Tandretsyan, Tatyana Spesovskaya, and Konstantin Miroshnikov ("Interested Parties") are at issue.  (*Id.* ¶ 7.)

The clerk entered default as to Defendant and the Interested Parties on October 2, 2015.  (ECF No. 17.)  On October 22, 2015, Plaintiff filed the present motion for default judgment.  (Motion, ECF No. 19.)  Plaintiff asks for the rights, title, and interest in Defendant currency to be condemned and forfeited to the United States.

(Compl. ¶ 22.)   For the reasons discussed below, the Court **GRANTS** Plaintiff's Application for Default Judgement against Defendant currency and the interests of Gurdeep Singh, Davit Davtian, Akop Narinian, Samvel Tandretsyan, Tatyana Spesovskaya, and Konstantin Miroshnikov, and enters a declaratory judgment.[1]

## II.   FACTUAL ALLEGATIONS

Plaintiff is the United States of America, representing the Drug Enforcement Administration officials who, pursuant to an investigation of a drug trafficking ring operating in and out of the United States, seized $99,870.00 in U.S. currency that represents, or is traceable to, "proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical" in violation of 21 U.S.C. § 881(a)(6).   (Mot. 7–10.)   The Interested Parties are the alleged members of the subject drug trafficking ring.   (*Id.*)

After seizing Defendant currency in a civil forfeiture action on August 12, 2014 (Motion 8–9.), Plaintiff filed a Verified Complaint for Forfeiture, in accordance with the civil forfeiture statute, on June 19, 2015.   (Compl.; Schonbachler Decl. ¶ 2.) Plaintiff executed process on July 8, 2015 and, beginning on July 6, 2015, posted a Notice of Civil Forfeiture on www.forfeiture.gov for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.   (Schonbachler Decl. ¶ 3, 4.)   Plaintiff sent each Interested Party notice of the Complaint on June 29, 2015 to each known address. (Motion 1–5.)

As per Supplemental Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the deadline for all known claimants of the civil forfeiture asset to file a claim expired on August 3, 2015.   (Motion 6.)   The

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

deadline to answer Plaintiff's Complaint expired on August 24, 2015.[2]   (*Id.*)   For interested parties who did not receive direct notice of the Complaint, a claim must be filed no later than 60 days after the published notice on an official government forfeiture site, like www.forfeiture.gov, and an answer 21 days thereafter.   (*Id.*)   Because information about this action was first published online on July 6, 2015, the claim deadline ran on September 4, 2015 and the answer deadline expired on September 25, 2015.   (*Id.*)   To date, no Interested Party—formally notified or otherwise—has filed a claim or submitted an answer.  (*Id.*)

Plaintiff formally applied for default against the Interested Parties on October 1, 2015.  (ECF No. 16.)  The court Clerk entered default on October 2, 2015.  (ECF No. 17.)  Plaintiff now moves for Default Judgement and Declaratory Relief.  (ECF No. 19.)

## III.   LEGAL STANDARD

### A.   Default Judgment

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under 55(a).  A district court has discretion whether to enter default judgment.  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).  Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether

---

[2]Plaintiff stipulated to extend the time to respond to the Complaint.  (ECF No. 12.)  Therefore, the deadline for Mr. Singh to file a claim lapsed on September 2, 2015, and the deadline to respond to the Complaint ran on September 23, 2015.  (Motion 6.)

the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### B.    Declaratory Relief

The federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The two principal criteria supporting entry of declaratory judgment occur when:  (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2)  the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.  *McGraw-Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted).

## IV.    DISCUSSION

### A.    Procedural Requirements

Before a court can enter default judgment against a defendant, the Plaintiff must satisfy the procedural requirements for default judgment set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1.  Local Rule 55-1 requires that the movant submit a declaration establishing: (1) when and against which party default was entered; (2) identification of the pleading for which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.  *Vogel v. Rite Aid Corp.,* 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Plaintiff has satisfied these requirements.  The Clerk entered default on Defendant currency on October 2, 2015.  (ECF No. 19.)  Based on information and belief, no Interested Party is a minor, an incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940.

(Schonbachler Decl. ¶ 22–23.)   All Interested Parties were served notice of the Application for Default Judgment on October 21, 2015.  (Schonbachler Decl., Ex. S. 65, ECF No. 19.)  Finally, Plaintiff complied with Federal Rule of Civil Procedure 54(c) by requesting a remedy not different in kind from that prayed for in the Complaint.   (ECF Nos. 1, 19.)   Plaintiff has thus complied with the procedural prerequisites for entry of default judgment.  *See PepsiCo Inc., v. Cal. Secy. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 have been met where plaintiffs address each required factor in their application for default judgment).

**B.    *Eitel* Factors**

The Court finds that the *Eitel* factors weigh in favor of default judgment.  The Court will discuss each factor in turn.

### 1.    Plaintiff Would Suffer Prejudice

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Plaintiff contends that the Defendant currency, $99,870.00, was furnished or was intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. § 881(a)(6). (Motion 10.)  Taking Plaintiff's allegations as true, the currency meets the statutory definition of the civil forfeiture law and therefore Plaintiff is within its power to enforce the code and seize the currency.  Without cause, this Court cannot enjoin Plaintiff from exercising its duties under law.  Moreover, absent entry of default judgment, Plaintiff will most likely be without recourse, given Defendants' unwillingness to cooperate and defend.  Because Plaintiff will suffer prejudice if he is without recourse against Defendants, this factor favors entry of default judgment.

### 2.    Plaintiff Brought Meritorious Claims and Plaintiff's Complaint Was Sufficiently Plead

The second and third factors, the merits of Plaintiff's substantive claim and sufficiency of the Complaint, also support entry of default judgment.

### i. 21 U.S.C. § 881(a)(6)

Federal civil forfeiture law provides that "All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical . . . , all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation" of the forfeiture law will be subject to forfeiture to the United States.  21 U.S.C. § 881(a)(6).  If the item or currency meets this definition, all rights and title to the item belong to the United States government.

The Court finds that Plaintiff sufficiently plead that Defendant meets the statutory requirements to allow for civil forfeiture.  Here, Plaintiff alleges that, after a lengthy investigation of a Middle Eastern drug trafficking organization, drug enforcement agents learned that the ring received shipments of narcotics from a Mexico-based drug trafficking organization.  (Compl. 2.)  Interested Party Gurdeep Singh would courier the proceeds of the drug for the Middle Eastern organization, and would deliver these proceeds to the Mexican organization.  (*Id.*)  Gleaned from information obtained via state wiretap orders, Plaintiff's agents learned of a drug deal set for August 12, 2014.  (*Id.* 3.)  Agents observed Mr. Singh leave his residence in Los Angeles and meet in a Sikh Temple parking lot.  (*Id.*)  Agents watched as an unidentified male drove a Toyota Camry into the parking lot (with a passenger also in the vehicle), and then the driver exited his vehicle, opened the passenger door of Mr. Singh's vehicle, remained in the vehicle for several minutes, and then left holding a shopping bag.  (*Id.* 3–4.)  After returning to his own vehicle with the bag, the man drove out of the parking lot and, after many erratic turns designed to detect any potential surveilling parties, arrived at a North Hollywood residence and exited the vehicle carrying the shopping bag.  (*Id.* 4.)

Armed with a search warrant, agents approached the residence.  (*Id.*)  Agents saw the two men from the Camry walking down the driveway; these men were identified as Interested Parties Akop Narinian and Samvel Tandretsyan.  (*Id.*)  Also

present on the North Hollywood property were Interested Parties Tatyana Spesovskaya, Davit Davtian, and Konstantin Miroshnikov. (*Id.*) As the agents approached Davtian and Miroshnikov, Davtian picked up a large brown paper bag and attempted to shove it under a couch cushion. (*Id.*) Inside the shopping bag agents found $99,870.00 in U.S. currency. (*Id.*) Miroshnikov, Narinian, Tandretsyan, and Spesovskaya each denied knowing of the brown bag or of its contents, and signed a waiver denying ownership. (*Id.* 4.)

Davtian later claimed the money belonged to him and that he intended to use the funds to buy a truck for his shipping business. (*Id.* 5.) He had no proof that the currency was legitimately obtained; nor could he explain why the funds were not deposited in a bank account. (*Id.*) Based on these facts, Plaintiff, through the drug agents, seized the $99,870.00 via civil asset forfeiture.

Taken as true, Plaintiff's complaint properly sets out the facts supporting a civil asset forfeiture under 21 U.S.C. § 881(a)(6). Therefore, because there are no policy considerations which preclude the entry of default judgment on this claim, *Eitel*, 782 F.2d at 1471–72, the Court holds that Plaintiff's Motion for Default Judgment on the § 881(a)(6) claim be granted.

### 3.    The Amount at Stake Weighs in Favor of Default Judgment

The third factor balances the sum of money at stake "in relation to the seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, No. C 11–0961–CW, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.* Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

Plaintiff seeks rights and title to the exact amount seized in the civil forfeiture: $99,870.00. Therefore the sum of money is reasonably proportionate to the harm

caused by the conduct of the defaulting defendants, and the amount is properly documented by Plaintiff. *Gen. Emp. Trust Fund v. Victory Bldg. Maint., Inc.,* 2007 U.S. Dist. LEXIS 35600, at *12 (N.D. Cal. April 11, 2007); *Cotton v. Zitterman Bosh & Assoc.*, 2012 WL 3289921, at *1 (D. Arizona Aug. 13, 2012).  Given Defendants' failure to appear and defend, and thus their failure to show that Plaintiff's requested damages are unreasonable, the Court finds that the amount at stake weighs in favor of default judgment.

### 4.   There is No Possibility of Dispute as to Material Facts

The next *Eitel* factor considers the possibility that material facts are disputed. *PepsiCo*, 238 F. Supp. 2d at 1177; *Eitel,* 782 F.2d at 1471–72.  As discussed, Plaintiff has adequately alleged a civil forfeiture claim by laying out the evidence to support a classification of Defendant as proceeds by or for a narcotic transaction in the Complaint.  The Interested Parties have failed to appear or otherwise challenge the forfeiture and are therefore held to have admitted all material facts alleged in Plaintiff's pleading.  *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").  Since Plaintiff's factual allegations are presumed true and the Interested Parties failed to oppose the motion, no factual disputes exist that would preclude the entry of default judgment.  This factor, therefore, favors the entry of default judgment against the Defendant.

### 5.   There is Little Possibility Default was Due to Excusable Neglect

Defendants' default does not appear to be a result of excusable neglect.  Rather, Defendants were properly served with the Complaint on October 21, 2015. (Schonbachler Decl, Ex. S 6, ECF No. 19.)  In addition, even after Plaintiff served Defendants with the Request for Entry of Default, Defendant's Interested Parties failed to appear in this action or otherwise offer any defense.  Other courts recognize that a party's failure to respond after receiving notice is unlikely to constitute excusable neglect.  *See, e.g.*, *Craigslist, Inc. v. Kerbel*, No. 11-3309, 2012 U.S. Dist.

LEXIS 108573, at *23 (N.D. Cal. Aug. 2, 2012) (noting the unlikeliness that the defendant's default was due to excusable neglect, "especially when Plaintiffs served not only the summons and complaint, but also the request for entry of default on the Defendant but still received no response."). Accordingly, the sixth *Eitel* factor favors default judgment.

6. Policy for Deciding on the Merits Weights in Favor of Granting Default Judgment

In *Eitel*, the court maintained that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. However, where, as in the case at bar, a defendant fails to answer the plaintiff's complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177 ("Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Accordingly, the Court finds the seventh *Eitel* factor does not preclude default judgment.

**C.     Amount of Plaintiff's Recovery**

Plaintiff seeks rights of title and ownership of Defendant: $99,870.00 in U.S. currency. (Mot. 1.) Because this amount reflects the amount seized on August 12, 2014, an award of $99,870.00 is appropriate.

## VI. CONCLUSION

For the reasons stated, the Court grants Plaintiff's application for default judgment and Declaratory Relief against Defendant. A Separate judgement will issue.


**IT IS SO ORDERED.**


November 16, 2015

_____
     **OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

9